Good morning, and may it please the Court, Mark Carlin, Fourth Petitioner, Benito Sandoval Martinez. My client is here to seek a reversal of the immigration judge's August 2002 in absentia removal order. The sole reason that my client was in proceedings before the immigration court was fraud. As noted in the record, in 2002, my client sought the services of Laguna Lupana Immigration Services in Santa Ana, California with regard to an alien petition filed on his behalf by his father. Unbeknownst to him, this service filed an asylum application on his behalf. And it subsequently, to that action, has become known that this service had a reputation for filing thousands of unsupported asylum applications on behalf of unknowing clients. As noted in the record, in March 2003, this service was raided by the authorities in Orange County and was described at that time as one of the largest immigration, organized immigration fraud rings. Is the only damage from that a faulty address? No, Your Honor. It's a little bit more than that. Because not only of the faulty address, but of the false application. Because of the false application, my client never would have knowingly filed a false application, especially when he is eligible. And what use did the immigration judge make of the false application? Is that what he said made him ineligible for cancellation? Exactly. Because of the in absentia removal order, he's ineligible to apply for cancellation currently. And there is also a petition, alien petition relative. I think his preference date is currently a year and a half out. But he's also ineligible for that, as it stands today, because of the in absentia removal order, Your Honor. So it's a little bit more than just an address. This whole case emanates from a fraudulent asylum claim filed on his behalf. And I can understand if the court is somewhat incredulous that how would this person not know what was being filed on his behalf. But as we've learned, this service had a reputation for doing this. Did he request a change in the asylum hearing? That's the question, Your Honor, that I can't answer because he didn't put anything to that in his declaration. I can only assume that that was something filed by this immigration service, because the preparer's name and address are on the applications as well, in addition to my client's incorrect name and address. I did notice that, Your Honor. And he's never – my client's never admitted that he filed it or that that's his signature. But granted, that's not in the record, and I know this case was briefed some years ago. But I have never – to be frank, I've never found out the answer whether he, in fact, did request a continuation of that asylum application. If we have to isolate what the IJ's error here is, you see it, it's in his denial of the motion to reopen without having granted a hearing. Is that the nut of it? His error is that there was – there are exceptional circumstances in that he did – he denied the motion to reopen. Because my client was defrauded by non-attorney immigration consultants, that's sufficient evidence of exceptional circumstances. But he says he doesn't believe your guy, that that's not the way it happened. That's what the judge said. So is his error not having provided a hearing before making that finding? If he has a hearing and finds that your guy's not telling the truth, that's a different story. Well, then he makes an adverse credibility finding based on testimony. So we have to pinpoint exactly what the IJ should have done here, is that he shouldn't have just disallowed the declaration. He should have set it for hearing. Is that the – Right. That would have been part of it, Your Honor. He shouldn't have just swept everything aside. He should have taken a hearing. He would have learned possibly more evidence about this service. Because that seems to be the IJ's skepticism, is he doesn't believe my client. He doesn't believe the story, if you would, to use a colloquialism. But if there had been a full hearing, evidence would have come out about this service, and then my client probably wasn't the – he wasn't – it's known now that he wasn't the only person who was victimized. I think there were thousands of victims of this service. So, yes, Your Honor, that's one element. Procedurally, he should have been afforded a full hearing. So if you win today, we should send it back to the IJ to go have a hearing about why Mr. Sandoval-Martinez didn't show up. Is that – You could do that, Your Honor. You could also find that, based on the record before you, that there are – were exceptional circumstances demonstrated by my client in order that the motion to reopen be granted, allowing my client just his opportunity to then present his cancellation of removal application before the IJ. You could do either, Your Honor. I see. As we see it, and as I've done some research since this case was briefed about two years ago, this is really a matter of equity. And this Court has held in various cases that when non-immigrate – non-attorney immigration consultants defraud individuals, that fraud may skew the whole proceedings. And I think the exact quote was that fraud by non-immigration – excuse me, non-attorney immigration consultant possibly has rendered the whole administrative proceeding so fundamentally unfair that the alien is prevented from reasonably presenting his case. And that's what we see in this case, that the fraud by the immigration consultants has really poisoned the whole case, which – and as it's a matter of equity, the Court's options are open. Well, I suppose in the case – the beginning of the problem is not appearing. Yes, Your Honor. He says he didn't get notice of that first – Correct. – notice to appear. What kind of a showing does he have to make to overcome the government statement that, well, we mailed it to his address of record? Right. We understand that, Your Honor. But it's clear – I mean, I'm just saying, what kind of a showing do you need to make to – It's really a factual showing that he didn't receive it, because we know that that was his incorrect address. Now, while the government states that the items weren't returned, they were just sent first-class mail alone. They weren't sent registered or certified. But it's his testimony that he didn't receive them at that address, which was incorrect. Now, granted, that was the address of record. It still is the incorrect address. And it's our position that his showing is his declaration, stating unequivocally that he didn't receive those notices. But here, Your Honor, to sum – and I'll save the rest of my time for rebuttal – in this case, ineffective assistance of a fraudulent non-attorney immigration consultant equals exceptional circumstances. So while the issue of notice to us really is secondary, the primary issue is that my client wouldn't be in this position but for the fraud of this now-convicted immigration service. And that's what we find are the exceptional circumstances warranting the granting of the motion to reopen. And I'll save the rest of my time. Let's do some questions for rebuttal. Thank you. Morning. Morning, Your Honors. Timothy B. Jaffick from the United States – from the United States Attorney's Office in Denver, Colorado, on behalf of Alberto Gonzalez, United States Attorney General. The immigration judge's decision in this case should be affirmed for three reasons. First, there were no exceptional circumstances. Second, the notice that was given complied with due process requirements. And third, the Petitioner has not made a prima facie case for eligibility for cancellation of removal. First, regarding the exceptional circumstances, as you heard Petitioner's counsel say today, and as you see in the briefing to the IJ and the BIA, the only issue that the Petitioner is raising is exceptional circumstances. Under 8 U.S.C. 1229A-B-5C, there can be two reasons for reopening, either notice or exceptional circumstances. The only thing that the Petitioner is raising here is exceptional circumstances. Do you not think he's raised the case of notice, not getting the notice? No, I don't. I don't, Your Honor. If you look at his briefing and his motion to reopen, he doesn't raise the notice issue. If you look at his notice of appeal to the BIA, he doesn't raise the notice issue. If you look at the arguments of the BIA, he doesn't raise the notice issue. And he just makes a bare mention of notice in his opening brief to this Court. And as this Court has observed, the Court can't manufacture arguments for the appellant and won't consider claims not argued in the appellant's brief. That's from Independent Towers of Washington v. Washington, 350F3-925 from the circuit in 2003. In his brief to the BIA, he submitted new evidence about the Immigration Service having been convicted, if I understand that correctly, right? He submitted evidence that the Orange County district attorney was investigating them for fraud. And the BIA didn't do anything with that one way or the other? That's well, they considered it in terms of, no, the BIA didn't. The BIA affirmed the immigration judge's decision without comment. So what do we do with that? Doesn't his submission of this new evidence at least warrant some treatment by the BIA? Well, the only way it could warrant some new treatment would be to consider it an exceptional circumstance. And there's no published case that I'm aware of where immigration fraud is an exceptional circumstance. That's a pretty sad commentary. If he's got the goods that the people who are helping him were really defrauding him, why wouldn't that be an exceptional circumstance? Well, exceptional circumstance is defined in the statute as something beyond the control of the alien. So, for example, in this particular case, I'm going to use two specific examples, acute things that happened to the petitioner beyond his control. Now, this case is not something that's beyond the control of the alien. It was his decision to go to the notary. It was his decision to sign under penalty of perjury that he was applying for application for asylum. It was his decision to put the address on the application. Now, the other thing is, this isn't a case where the fraud, whatever the fraud was of assuming there was a fraud by the notary, is the but-for cause for the removal of the petitioner. The petitioner was found removable because he entered without inspection in 1990. He went to the notary in 2002. So whatever the fraud was, it wasn't what the – it wasn't the but-for cause of his removability. This Court has slightly expanded the definition, the statutory definition of exceptional circumstances in a couple of cases. The first one is Singh v. INS 295 F3D 1037 from this Court in 2002, and in some other cases like Chete Juarez v. Ashcroft. But in each of those cases, the alien had no reason to delay the hearing, had no reason to miss the hearing, and both had attended hearings before. In other words, there were situations where petitioners were actively seeking relief and had a reasonable expectation that they would get that relief, wanted that relief. Now, addressing the notice issue, even though the petitioner hasn't raised it, there is no dispute that the INS mailed the notice of this case to the address that was put on the I-589. And this Court has held that it does not violate due process to mail a notice of hearing to the address an alien gives. That's the United States v. Gomez Gutierrez 140 F3D 1287 from the circuit in 1998. And in that case as well, the petitioner gave an incorrect address to the INS. The INS mailed a notice of hearing. He didn't show up. He was deported in absentia. And he argued that because he gave an incorrect address, that should show that there was not due process in his hearing. But he says he didn't provide the address. This other outfit provided the address, and they did so without his authority. That's the essence of his ---- That's what I understand the argument to be as well. But he signed the I-589 under penalty of perjury. In Gomez Gutierrez's case, this Court observed that in other contexts it's held that signing isn't a mere formality, but it signifies the signer has read the document and attests to its accuracy. The INS has to rely on something. And their statutes say that they can rely on what the petitioner tells them his address is. And this Court has held that that doesn't violate due process. I'd also briefly like to discuss Salta v. INS 314-F3D-1076 from the circuit in 2002. That case specifically discussed the issue of what kind of showing had to be shown to show that there wasn't any notice. That case looked at two different things. In order for the petitioner to overcome the presumption of delivery, the Court looks at the content of the dispute and also the context of the dispute and also the content of the declaration that's given. In terms of the context of the dispute, in Salta's case, again, it was a person who had no motive to avoid a removal hearing. And that person had previously shown up at hearings. And, secondly, the content of the required sworn declaration in Salta said it had to have two pieces, one, that the petitioner didn't receive notice, and, secondly, that no responsible party at the petitioner's residence had received notice. In this case, the petitioner doesn't satisfy the context or the content element of Salta. In terms of the context, the petitioner had no motive to attend the hearing because he wasn't eligible for asylum. And the petitioner has never claimed, except for in his I-589, that he was eligible for asylum. So he knew if he showed up, he was going to get removed. Now, later on, he's raised this issue of cancellation of removal, and I'll discuss that in a minute or two. But that's an ex post facto thing. In Salta, it was a petitioner who wanted a relief and was seeking a relief. The only issue, in other words, there was no way he could have brought cancellation up at the first appearance if he had shown up? I believe he first would have had to be found removed because cancellation of removal, as the term implies, he would first have to be shown he was removable. But I'm not aware of any defense that he's brought up to for asylum that he's actually eligible for that. Secondly, in Salta, regarding the content of the declaration, here the petitioner has said that he hasn't received notice, but he has not said that no responsible party at his residence received notice. So, therefore, even if Salta applies, and I don't think it applies because he hasn't raised the issue of notice and because there's no question as to the mailing going to the address he provided, so, therefore, the Gomez-Gutierrez line of cases applies. But even if Salta applied, there would be no reason to remand because he hasn't satisfied either the content or the context elements of Salta. Now, briefly, I'd just like to address the issue of his eligibility for cancellation of removal. Under the regulations at 8 CFR section 1003.23B3, the petitioner, in addition to showing either notice or exceptional circumstance, has to show that he would be eligible for the underlying relief, here cancellation of removal. That requires three things. One, in the United States for 10 years, be of good moral character, and also exceptional or extremely unusual hardship to a spouse, parent, or child who is a U.S. citizen or legal permanent resident. Here's the third one that he submitted no evidence that he would be eligible for. In his application, he said that it would be a parent and a child who would be eligible. In the application, it asks questions about the hardship to the parent at questions 49 to 52 at page 72 of the record. The petitioner doesn't even fill in that part of the application. Secondly, regarding hardship to the child, the BIA in In Re Monreal Aguanaga 23 INA DEC 56 from 2001 has held that removing a 34-year-old man to Mexico with an 8- and 12-year-old U.S. citizen children is not an exceptional and would not cause exceptional or extremely unusual hardship. This court has found that that interpretation of the statute does not violate due process in Salvador Gallegos v. Ashcroft 389 F3D. Does the record show how old the child is here? It does. I believe the child was 10 years old at the time of the application. That may be off a few years. We can look at that application for cancellation. My time is up, Your Honors. I would urge that the court uphold the immigration judge's holding. Thank you very much. You're welcome. Mr. McCrory. Thank you, Your Honor. Briefly on the issue of cancellation of removal, I believe the child was born in 1992, Your Honor, in Los Angeles County. But, of course, my client never had a hearing on the cancellation of removal application. So in those circumstances, cancellation applications, usually quite a bit of evidence is obtained via testimony. And also the court will note that the immigration judge didn't make any comment on the prima facie of whether my client made a prima facie showing of cancellation of removal. With regard to respondent's comments, yes, my client was removable from the United States. The court may be aware what usually happens in circumstances where one is called to appear, the applicant or the alien concedes movability and then moves for a cancellation of removal. And because, again, I get back to the genesis of this matter, which was the fraudulent application by this immigration service in Orange County. And but for that fraudulent application, my client would be eligible to apply for cancellation. And I just want to end my comments on a quote from this court. I think a case decided after this case was fully briefed. Balillo de Leon v. Gonzalez, 410F3rd, 1090, decided by this circuit in 2005. And in that holding, this court held that, quote, in certain circumstances, ineffective assistance of a nonimmigration consultant can form the basis of equitable relief in the context of a removal proceeding. And I submit to you that in this case, ineffective assistance of a nonimmigration consultant has irreparably damaged my client's ability to make any type of legitimate application to the now Department of Homeland Security. And I'm asking this Court to reverse the I.J. and the BIA's decisions, find my client's motion for to reopen valid, granted, and send this matter, amend this matter back to the I.J. for further proceedings. The immigration judge did say that it wasn't a prima facie showing of eligibility for cancellation. That's all I said. That's all he said. But he didn't comment. Obviously, there was no testimony given. There was no hearing on the application. I suppose in order to, there's some sort of a showing of a prima facie case that your supporting papers need to make in order to get them to reopen. As I understand, we did show his continuous physical presence. We did show the U.S. hardship on the U.S. citizen child and all the other requirements. It's our position that we did make a, at least a prima facie showing on documents. And again, most, in my experience, most cancellation applications are decided on oral testimony before the I.J. Sometimes there's several hearings before the I.J. with third-party witnesses in addition to the alien petitioner. Thank you. General, I understand that the case was, some mediation attempt was made. Is that still in the works, or is that kaput? We are open to mediation, but I think we had two to three telephone conversations and nothing came of it. That's my understanding as well. If we were to receive a correction from the court, we would not have this purpose of further discussion, so I think we can progress as far as we could. What kind of further direction were you thinking of? If you tell me we lose, we'll go and we'll talk some more. It usually works the other way around. Or, you know, if there's a specific case you'd like us to look at or a specific kind of issue for us to look at, you know, we would certainly do that. Thanks, gentlemen. Thank you. Good morning. The case was started as submitted.
judges: Canby, T.G. Nelson, Silverman